Good afternoon, please be seated. Would the clerk call the case, please? 324-0618, Armando Colentino v. Clifford's Towing & Recovery, LLC, faculty, by Michael Allen. Counsel? Thank you. Mr. Anderson, correct? Yes. Thank you. You may proceed. May it please the Court, Your Honor, Counsel? My name is Patrick Anderson. I represent the plaintiff, Carly O. Tolentino. We are asking this court to reverse the decision of the trial court which granted summary judgment in favor of the defendant. Finding defendant owed no duty to the plaintiff. This appeal involves one issue. It's whether the defendant owed a duty to the plaintiff. I'll discuss that issue in two primary areas today. First, the defendant's common law duty of ordinary care. And second, the defendant's heightened duty to exercise the highest degree of care as a common carrier. And what do you think is the practical difference between the two, between an ordinary duty of care and a heightened duty? Well, I think a heightened duty of care goes beyond the ordinary standard of reasonable care. I think that there is a reason that common carriers have a heightened standard beyond what an ordinary careful person or company has to do. And it's because of the unique control that they have over the safety of individuals and the control that they have over the transport. And so there is a practical difference because this court, the common carrier issue is not necessarily dispositive of summary judgment. Even if the defendant is not held to a common carrier status or found to be a common carrier, that does not negate its duty of ordinary care. It regardless had a duty of ordinary care, reasonable care, whether anything it did or did not do, complied with that duty of reasonable care as an issue of breach, which is a question of fact for the jury. What extra responsibilities would Penaloza have had under a heightened duty of care analysis? I think that goes to, I think that's a jury question. That goes to what, that goes to the issue of breach. And it goes to what it would take for Mr. Penaloza to do to breach that duty of care. Under the highest duty of care, maybe he had a duty to physically assist the plaintiff out of the vehicle. Maybe he had an obligation to park in a location that had more light. Maybe he had the obligation to provide more explicit instructions or warnings to Mr. Tolentino than he would have had under his duty of reasonable care. Did he pay extra? Did Mr. Tolentino pay extra for the ride in, the ride home in the truck? He did not. It was part and parcel of the tow services that he paid for. The defendants agreed to transport him as part of those services. And when they agreed to transport him, they had to do that with reasonable care, which includes providing him an opportunity, a reasonable opportunity to leave the conveyance safely. In this case, it's important to remember that the procedural posture is a motion for summary judgment. And so when analyzing all of the issues, the pleadings and evidence must be strictly construed against the defendant and liberally in plaintiff's favor. And all reasonable inferences must be drawn in plaintiff's favor. As this court knows, this is a trucking company that agreed to transport a plaintiff in a large commercial vehicle that was unfamiliar to plaintiff. The defendant was aware that the plaintiff had vision problems. The defendant knew that it was rainy, knew that it was dark. And the defendant chose to park in a dark location, offering no assistance, instruction, or warning. And the plaintiff fell getting out, suffering serious injuries. The summary judgment standards are important because the defendant raises a number of factual disputes in their duty arguments. One is whether the defendant knew about plaintiff's vision loss. Plaintiff clearly testified he told the defendant driver that he lost his vision, could no longer drive, that it was very difficult for him to see. The defendant driver denies this, says that Mr. Tolentino told him nothing about his vision problems. There's also a question of fact as to whether the plaintiff had difficulty getting into the truck. The defendant truck driver testified the plaintiff jumped excitedly into the truck. The plaintiff testified it was difficult for him to get into the truck because it was a big step. Moreover, whether the driver even saw the plaintiff get in is a question of fact because the plaintiff testified he did not help, or he did not ask the driver for help getting in because the driver was nowhere in sight at the time. Moreover, getting out of the truck and getting into the truck are two different things with different considerations and different actions. There is a question of fact as to whether the defendant invited plaintiff into the truck. The defendant continues to argue it is undisputed that the driver did not ask the plaintiff to board, but the plaintiff testified that the driver cleared all of the things from his passenger side and he took that as an invitation to ride with him. There's also a disputed question of fact as to whether Mr. Penaloza saw plaintiff get out of the truck. He says the plaintiff got out of the truck immediately after it was stopped and that he saw him fall. The plaintiff testified that he waited in the truck while Mr. Penaloza got out and was working a mechanism in the back of the truck, and that he waited 30 to 60 seconds. How does that alleged question of fact affect duty? Well, it goes to the knowledge of Mr. Penaloza that what he knew... I mean, whether he saw him fall or not, how does that create a duty? It's just a disputed question of fact. The duty should exist before then, should it not? It does. It does now. You're correct. You are correct. So anyway, these are all disputed questions of fact that cannot be resolved, particularly in defendant's favor at the summary judgment stage. Now, as far as the ordinary care issue goes, we don't need to look much farther than defendants' admissions. Defendants in their response brief admits that Clifford Towing is, under Illinois law, a private carrier who owes plaintiff only a duty of ordinary care to reflect frame from negligent acts in the transportation from point A to point B. Is that the full definition, or is that part of the definition? The part of the definition of what I'm sorry... Common carrier? No, I'm arguing... My point is, yes, that's part of the definition of common carrier. My point is, even absent common carrier status, Clifford Towing has now admitted their lesser duty of ordinary care. And with or without common carrier status, defendant owes a duty of ordinary care. So this admission, regardless of the outcome of the common carrier issue, this admission requires reversal because defendant has admitted there is a duty. If defendant owes any duty of reasonable care, summary judgment was improper and it should be reversed. So the facts beyond the admission, admission aside, the facts and circumstances give rise to a duty of ordinary care. Defendant's arguments attempt to focus on plaintiff's actions, and that's not proper when we're analyzing duty. When analyzing the duty issue, the focus must be on the defendant. In Ward v. Kmart, our Supreme Court said the scope of the defendant's duty is not defined by reference to a plaintiff's negligence or lack thereof. The focus must be on the defendant. A major concern is whether the defendant could reasonably have foreseen injury to plaintiff. In Kunis, a case relied on heavily by the defendant, they recognized the courts considered what is apparent to defendant at the time of his conduct when assessing foreseeability. So, for example, when the defendant is arguing that plaintiff was familiar with the lighting and the weather conditions when he got out of the truck, that's the wrong focus. The important part of the duty analysis is that the driver was also aware of the weather conditions and was aware that it was dark and chose to park the truck in the dark. The defendant also argues multiple times in his brief that plaintiff got out of the truck without seeking assistance. Again, that's attempting to shift the focus to plaintiff's actions instead of what Mr. Penaloza knew about the potential danger. The case law is clear. We cited multiple cases in our briefs that indicate the question of whether a defendant knew or should have known of an impending danger is a question of fact. And so whether Mr. Penaloza knew or should have known that it was dangerous for Mr. Tolentino to get out of that truck, given what he knew about the situation, given what he knew about Mr. Tolentino's vision problems, that's a question of fact. Whether he knew of the danger presented by plaintiff attempting to exit the truck unassisted is a disputed question of fact. And even if the plaintiff's actions could amount to contributory negligence, that's an affirmative defense. It could reduce liability, but it doesn't obviate defendant's duty to act with ordinary care. Our Supreme Court has repeatedly recognized it's axiomatic that every person owes to all others a duty to exercise ordinary care, to guard against injury, which naturally flows as a reasonably foreseeable consequence of his act. The touchstone of the analysis is to ask whether the plaintiff and the defendant stood in a relationship to one another that the law imposes upon the defendant a duty, an obligation of reasonable conduct. Here, defendant was engaged in transporting its customer to his home from a location of a vehicle breakdown as part of its towing services. Defendant provided the vehicle, was in full control of it. Defendant knew plaintiff was unfamiliar with the tow truck, knew plaintiff had vision problems, knew it was dark, knew it was raining. He chose to park where he chose to park. Counsel, is it fair to assume or to say that a tow truck operator undertakes to transport vehicles for hire but not passengers for hire? So that gets into the common carrier analysis. And that's essentially defendant's argument, is they want this court to look at the primary business of the company. And defendant would like to argue that because they primarily tow trucks and vehicles, not people, they cannot be fairly characterized as a common carrier. But Illinois doesn't define common carrier that narrowly. If it did, cases like Pajak, where a Ferris wheel operator was a common carrier, or O'Callaghan, where a scenic railway was a common carrier, or Arnt, where a merry-go-round operator was a common carrier, those findings wouldn't be possible if you only looked at the primary business of the defendant. Instead, Illinois looks to the unique control that a common carrier has over its passenger safety. In cases like Lombardo and Carson, because the owner or the premises controller had control of the premises, it owed the duties of a common carrier. We also cited cases in which the defendants did not meet the technical definition of a common carrier, but were still held to a highest standard of care because they were providing the same basic function as a common carrier, which is transporting individuals. So this court does not apply. Defendant's asking this court to apply Texas law to change the definition of common carrier to focus on the primary business of the entity. And so you're right, Your Honor. Their primary business is transporting vehicles. But in this instance, they had all of the indicia, all of the reasons that we hold common carriers to this higher standard of care are there. The unique control over the plane of safety, the control over the vehicle, the same basic function. And so that's why we argue they should be considered a common carrier, and that even if they are not a common carrier, even if they are a private carrier under the law, under Green and Doe, they should be held to a highest standard of care as a common carrier would. Counsel, on appeal, you argue a new theory, which was that the defendant voluntarily undertook to transport, opening it up to liability. Can you tell me how do you reconcile the common carrier status and the voluntary undertaking analysis? Again, I think the voluntary undertaking goes to the duty of ordinary care, which is a lesser duty that exists regardless of common carrier status. So even if there is no common carrier status, this court could recognize a duty of ordinary care common law or by what they voluntarily undertook. I think the voluntary undertaking argument is essentially another way to restate the common law ordinary care argument, because essentially when they agreed to transport this man, they agreed to do it with ordinary care. That's always been our ordinary care argument. Obviously, we argue they also have the highest duty of care as a common carrier. But even if they don't, the ordinary duty of care doesn't go anywhere. The Texas case's defendant cites are actually illustrative of this point. In both of them, there was a finding that the company could be held to a duty of ordinary care, even though there was no common carrier status. In the speedboat leasing case, the court held that the jury was properly instructed that the defendant owed a duty of ordinary care, even though they were not a common carrier. In the other Texas case, the defendant cites Howell versus City Towing Association. The court actually reversed a grant of summary judgment against the tow truck company, finding it owed a duty of ordinary care, even though it was not a common carrier in that situation. The court stated, was the action of the driver an exercise of reasonable care under the circumstance? We do not decide that question at this summary judgment proceeding. So even defendants, Texas cases show that even if defendant is not a common carrier, summary judgment was improperly granted because defendant owed a duty of ordinary care. So the absence of common carrier status did not, does not negate the duty to act with ordinary care. In Nelson, the court stated the duty to act with ordinary care does not depend on contract, privity of interest, or the proximity of relationship, but extends to remote and unknown persons. Given the facts and circumstances in this case, in the record, the myriad factual disputes that require resolution by a jury and defendant's admission of the duty of ordinary care granting summary judgment was error. Error. Duty is not defined as narrowly as the trial court applied it. In our briefs, we cited multiple cases, including Marshall, including Greenhill, in which the terms of duty were stated too narrowly. Wasn't Marshall a business invitee case, though? It was, but the point, it was a duty analysis in which the court found it was a case where a vehicle crashed through the restaurant. And the court found that it was not the issue, the duty issue was not whether the defendant had a duty to install poles or to prevent the vehicle from going through. The duty was whether they had a duty of reasonable care. The court found they did. The court found that whether they had an obligation to install poles or do any other fact-specific thing went to breach, which is a question of facts. Same thing here. Whether the defendant had an obligation to help plaintiff out of the truck, whether he had an obligation to park somewhere different, whether he had an obligation to give warnings or instructions, those go to breach. The issue here is whether the plaintiff or whether the defendant had a duty. Those issues go to breach. That's what those cases say. That's what Marshall and Greenhill instruct. So here, the tow truck company agreed to transport a customer home in the dark of the rain, knowing he had vision problems, knowing all of these other things. Granting summary judgment on this record was improper. This court should reverse the decision of the trial court granting summary judgment and remand the case for further proceedings. Thank you. Thank you. Justice Anderson, any questions? No, thank you. Justice Bertano? I have one. In the voluntary undertaking slash ordinary care version of this case, does that duty exist in your position, even if this gentleman were not a tow truck driver? In other words, you were just a friend who picked somebody up? Yes, absolutely. It's the same duty that we all owe to each other of reasonable care. The circumstances in this case dictate he gave them a ride, he knew all these things about them, he chose where to park, he had control over the vehicle. That is how his duty arises. But is that an affirmative duty? It is. It is. It's the same as any one of us that has a duty to act with reasonable care. What we do and don't do, whether what we do or don't do complies with that duty is a question of fact for the jury. Here, these two people weren't strangers. He was in his truck. He knew these things about him. They agreed to transport him. So the relationship gives rise to that ordinary duty of care. Thank you. Thank you. So just follow up to that one question then. Common carriers have no discretion to refuse, correct? When they have room and no legal excuse to refuse? Correct. They are open to the general public. Okay. All right. Thank you. You're welcome. Thank you, Your Honor. Thank you. Counsel? Good afternoon, Justices, esteemed guests. May it please the Court. My name is Michael Holey. I represent Pelley Clifford's Towing and Recovery, LLC. At the outset, let me be clear. Defendant does not admit to owing a common carrier duty or a duty of ordinary care to plaintiff based on these facts in this case. On the bottom of page 22 of your brief, it kind of sounds like you acknowledge there's an ordinary duty of care. They completed the transportation, Your Honor, and we state explicitly that the two underlying judges that reviewed this entire case, they got it right. In this case, the plaintiff engaged a private tow truck company through a AAA private contract to tow his vehicle to his home. I'm sorry. I just don't understand. In your brief, it says, Defendant Clifford's towing is, under Illinois law, a private carrier who owes plaintiff only the duty of ordinary care to refrain from negligent acts in the transportation from point A to point B. And he completed that transportation when he arrived at the house. So getting out of the truck is not part of that? In the lighting of the vehicle, this comes from cases that are cited by a plaintiff. For example, the Rothall v. CTA case, it states that that heightened duty of care of a common carrier I'm not talking about common carrier duty of care. I'm talking about ordinary care. Right. That ended when they came to the house. They pulled into the driveway. They pulled into the driveway. They put the truck in park, and that's it. The vehicle was stopped, and this gentleman jumped out of the vehicle on his own without requesting any assistance. This is the same individual who got in the vehicle without any assistance. This is the same individual who decided to jump in this tow truck. Okay, but that sounds like you're talking about breach. I'm just wanting to talk about whether there is, in fact, a duty of ordinary care that extends at least until when he gets out of the car. Had this been the scenario where they are driving and the tow truck driver gets involved in an accident during the transportation, I would agree with Your Honor that there would be something going on at that point. In this scenario, under these facts, there's clearly no ordinary duty of care owed to this individual when he jumps out of this vehicle on his own. This is the same individual who comes into the vehicle, and this is an incidental part of what the tow truck company is all about. We've discussed in our briefs about common carrier and the distinction between what is your business purpose. And the cases that the plaintiff cites in terms of other than bus companies, CTA, train, plane, they are involving school buses. And so their primary purpose is to transport passengers, not vehicles. Mr. Coley, have you found any Illinois courts that expressly apply the primary business rule to the question of whether common carrier status applies? In the case, in the school bus. Other than transportation of children? That is the only cases that, and it was clear in the trial court, that there are no Illinois cases on record that suggest that a tow truck company owes a common carrier duty of care, the heightened duty of care for a tow truck company. The argument is that the business purpose of the tow truck company is to transport vehicles. In this situation, it was an incidental carriage of Mr. Tolentino. And to hold the tow truck company to a duty of care, let alone a heightened duty of care under the common carrier, is a bridge too far. Let me ask you the same question I asked Appellant's counsel. What's the practical difference between an ordinary duty of care and a heightened duty of care in this case? Well, in this situation, if in fact the court finds a common carrier, a heightened duty of care, our driver completed his mission that day. He ended the transportation. He got the plaintiff to his home. And there's no question at all that this was plaintiff's home. It wasn't some foreign land. It was plaintiff's home. He knew the lighting. He knew the weather conditions. He knew everything relative to getting in the truck, same conditions getting out of the truck. He then asked to get in the truck. He had no indicia of any type of disability. In fact, this claim in plaintiff's brief about the plaintiff having a disability, he wasn't adjudicated disabled until a year after this accident. There was no communication whatsoever before this individual, Mr. Tolentino, got inside the truck. It was during the transportation as an incidental, which Mr. Tolentino agrees, was merely small talk where they discussed this Uber situation. Importantly, and in terms of all of Mr. Tolentino's myriad health conditions, Mr. Tolentino did not reveal the myriad conditions of Mr. Tolentino. He did not reveal that he had stopped driving because he had constant blurred vision in both of his eyes, that he'd stopped driving at night, that he had problems watching TV, that he had bilateral retinopathy, that he had glaucoma, that he had a bypass rat. To insert a duty on the part of a tow truck driver with an incidental small talk conversation during the drive and to convert that into saying that this tow truck company now has a duty of care to bubble wrap this plaintiff into him getting out of this vehicle when he got out of the vehicle all by himself without any issues. He got out of the vehicle all by himself. He did not request any assistance from the tow truck operator. The tow truck operator was nowhere near where Mr. Tolentino exited the vehicle at the time he exited the vehicle. Counsel, is foreseeability of an occurrence, though, enough to create a duty? It is not. And we've discussed that what is at issue is what is reasonably foreseeable at the time of the incident, not in hindsight. So the Illinois law states that we're not to look at this situation in hindsight. It's what was available at the time of this incident, and clearly what was available to this tow truck operator was very little information relative to Mr. Tolentino. So Illinois does not require the defendant to be clairvoyant or to take all measures to prevent an arguably foreseeable occurrence. Defendant is not required to wrap the plaintiff in the bubble to prevent an occurrence. The burden on the defendant in this scenario under these facts is too high. For example, we cite the Lance v. Senior case. That was that 9-year-old boy who was a hemophiliac. The defendants knew it. He was an overnight guest at the defendant's home, and the 9-year-old plaintiff was playing with a needle which got caught in his throat, and thereafter he sucked into the inner part of his lung, and the Illinois Supreme Court held no duty under that situation. It was properly dismissed. Here the magnitude of placing that burden of a legal duty on this defendant, tow truck company, under this set of facts is too great. The trial courts, and we have two trial courts, independent, reviewed all of the evidence. Two different judges reviewed all of the evidence on the initial motion for summary judgment and on the motion to reconsider. Unlike the Marshall case, the Marshall case only involved a 6-15 motion to dismiss. In this situation, the judges have reviewed all of the evidence, the testimony of the plaintiff, the testimony of the defendants in this case. Counsel, could you address the plaintiff alleges that they preserved an argument with regard to voluntary undertaking? Could you address briefly the merits of that? Right. I'd be happy to address that, Your Honor. It's our position that at the trial court level, voluntary undertaking was not taken up. It was not part of either the motion for summary judgment or the motion to reconsider. That argument is waived, Your Honor. But also relative to the voluntary undertaking, acts of kindness or courtesy don't create a legal duty unless the conduct increases the risk of the harm, causes the plaintiff to forego other protective measures, as the Vesey v. CHA case. Here, there's no affirmative misconduct or inducement of reliance on the part of the defendant. The plaintiff was not promised help getting out of the vehicle. He was not told to expect help getting out of the vehicle. The plaintiff got in the vehicle on his own. He got out of the vehicle on his own. In our view, number one, the voluntary undertaking was waived at the trial court level, and two, it is inapplicable to this set of facts in this case. Counsel, just so I'm clear, you're conceding there was a duty of ordinary care from the time the tow truck pulled away until the time it pulled into the gentleman's driveway and the transmission was put in park. Is that fair? I think an honest view of the situation where this individual incidentally gets in the vehicle, again, Your Honor was right on point that there was no additional fee charged. There was nothing charged for him to get in this vehicle. If something had happened during that transportation, if they got into a catastrophic incident, there is some case law which suggests that in that situation there would be some duty owed. In this situation, under these facts, there's no question that the tow truck driver fulfilled all of his obligations. I'm not talking about a breach. I'm just asking you whether you would acknowledge there is a duty of ordinary care until the truck pulled into the driveway and the driver put the truck in park. I would say under that scenario, it's possible that there would be a duty of ordinary care under that scenario. But those are not the facts of this case and there is no duty in this case. And the trial judges both ruled based on the facts of this case, there was no duty when Mr. Tolentino injured himself at his home on that day. Thank you, Mr. Holman. Thank you, Justice Anderson. Any further questions? Justice Bertoni? No, thank you. Thank you, Mr. Holman. Thank you. Mr. Anderson? Mr. Anderson, for the record, we're not related. We're not. Correct. Yes. That's true. With respect to defendant's arguments essentially accusing plaintiff of contributory negligence, he got in without assistance, he knew of the lighting and the weather. That's why I brought up the standards for summary judgment at the beginning of my argument is because those facts cannot be interpreted in the light most favorable to the defendant. And as Ward instructs, as Kunis instructs, the focus of the duty analysis is not on the plaintiff, it's on the defendant. We cited cases in our briefs that indicate a common carrier not only has the highest duty of care in transporting individuals but allowing them a safe way to leave the conveyance. I believe that the Rothelli case that we cited and that we've referred to, I may be wrong about that one, but there is a case, it may be Rothelli, where the court found that the defendant had a common carrier duty during transportation but that after the individual had left the conveyance, their duty was one of ordinary care. So that, again, shows the defendant can have a duty of ordinary care without being a common carrier. What about the process of leaving the conveyance in the context of a duty of ordinary care? Any guesses on that? Correct. I believe, well, it depends on, so the common carrier cases say that the highest duty of care extends to giving them a safe way to leave the conveyance. I think Rothelli says that once they have left the conveyance, then it becomes a duty of ordinary care. But I think even if there is no common carrier duty, the whole way to travel, even if we say that they don't meet the definition of common carrier, they've got a duty of ordinary care in transporting him, in allowing him a safe place to get out, in ensuring he can get out of this vehicle that they control is a large commercial vehicle and that plaintiff is unfamiliar with. I do want to address... How familiar is he to get into it? Well, yes. You're right. I'm glad you brought that up because getting into it and getting out of it are different. There are different considerations when you're pulling yourself up. The likelihood of injury, I would submit, is less when you are going up these stairs. There's different things to hold on when you're going down. You have to contend with gravity. He's never descended these steps before, regardless if he did go into them. And the way he describes trying to descend the steps lends credence to that. He said that he sat there and thought about it, and he had to open the window and open the door and try to figure out a way to put his hands and feet so he could climb out. So it's a different situation than climbing in and out. So just because he climbed in, I don't think you can take for granted that he's familiar with the way to descend. The defendant knows he's never gotten out of this. Briefly, the plaintiff's complaint alleges the duty arose when the defendant agreed to transport the plaintiff in the defendant's vehicle. In the trial court, the plaintiff argued that once the driver—we cited the section of the record in our brief— that once the defendant invited the plaintiff into his truck, he had a duty at that point. So essentially, we've always alleged ordinary care. We've always alleged voluntary assumption. I don't think voluntary undertaking is waived, but even if it were, there's no—I mean, the ordinary care argument was definitely pled, argued to death. I do want to say the defendant argues about the plaintiff's—about what parts of the disability or supposed disability the plaintiff told the defendant about. In the briefs, it is very clear. The questions and answers from plaintiff's deposition are written out. He says, we were making small talk. I told him I used to drive for Uber. He asked me why I couldn't do it anymore. I told him I lost my vision. I no longer drive. You told him that you stopped driving Uber because you had vision problems? Yes, sir. And then he repeats. You told the tow truck driver that you had problems with your left eye? Yes, sir. He said, I told him I have difficulty seeing. I told him it's very difficult for me to see. So if you want to parse the details of that, that is a trial fact question. But there can be no question for this—for purposes of this motion that the plaintiff told the defendant he's got vision difficulties. So whether that's called a disability, whether it needs to have an adjudication of disability from the Social Security Administration is irrelevant. He can be fairly qualified as a disability. He had difficulty seeing. As far as the foreseeability argument goes, this is not like a case—the cases defendants cite Tunis and Lance. This is not like a case like that. This is not the same kind of tragically bizarre, freakish, fantastic, highly extraordinary incident that are deemed too remote. And also, counsel has inferred and argued that our duty analysis is restricted to foreseeability. As the briefs make clear, we've repeatedly gone through all of the foreseeability factors—the magnitude of the burden, the likelihood of the injury. The only ones that these defendants address are public policy. They don't even mention which policy implications are at issue here. And second, they say that the burden is too great. But the burden of helping a visually impaired old man out of a truck is not too great. It wouldn't require any extra expense. It would only require inconvenience. So, again, we'll rest on the briefs for the remaining arguments. I understand that I am out of time. I thank you, Your Honor. We ask—Your Honors, we ask that you reverse the decision of the trial court, which granted summary judgment. Thank you. Thank you very much. Justice Anderson, any questions? No, thank you. Justice Bertoni? No, thank you. Thank you. Counsel can stand down. The court will take the matter under advisement and opinion will be issued forthwith. Thank you. Have a good day.